UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

BOLLINGER SHIPYARDS LOCKPORT,                    CIVIL ACTION
LLC

VERSUS                                           NO: 10-2953

M/V SAND QUEEN                                   SECTION: R(4)


**ORDER AND REASONS**

Before the Court are plaintiff Bollinger Shipyards Lockport,
LLC's[1] and intervenor Caterpillar Financial Services
Corporation's[2] motions for summary judgment.  Because there are
no genuine issues of material fact regarding the validity or
priority of Bollinger's and Caterpillar's liens, the motions are
GRANTED.


**I.    BACKGROUND**

In June and July of 2003, Bollinger provided labor and
materials to the M/V SAND QUEEN in connection with the vessel's

---

[1]    (R. Doc. 58.)  Unless otherwise indicated, all record
citations refer to the docket in civil action number 10-2953.

[2]    (R. Doc. 63.)

inspection by the United States Coast Guard.[3]  At the time, the M/V SAND QUEEN was owned by Ocean Runner Marine, Inc.[4]  On August 5, 2003, Bollinger issued an invoice to Ocean Runner for those services in the amount of $217,263.71.[5]

On January 12, 2004, Caterpillar entered into a loan agreement and promissory note with Marine Management Contractors, Inc.[6]  Under the loan agreement and promissory note, Caterpillar loaned Marine Management the principal amount of $975,000, part of which was used to purchase the M/V SAND QUEEN from Ocean Runner.  To secure payment, Caterpillar received a mortgage on the vessel,[7] which was recorded with the National Vessel Documentation center on January 13, 2004.[8]  On or about January 14, 2004, Ocean Runner transferred title to the M/V SAND QUEEN to Marine Management.[9]

After failing to receive payment for its services, Bollinger filed an *in rem* action against the vessel in the United States

---

[3]    (R. Doc. 58-2; R. Doc. 58-3.)

[4]    (R. Doc. 58-2; Bankr. Case No. 06-50194, R. Doc. 16.)

[5]    (R. Doc. 58-2.)

[6]    (R. Doc. 63-4 at 1-33.)

[7]    (*Id.*)

[8]    (R. Doc. 63-5 at 9.)

[9]    (Bankr. Case No. 06-50194, R. Doc. 16.)

2

District Court for the Western District of Louisiana,[10] and the
vessel was seized by the United States Marshal in the Western
District.[11]  On April 5, 2006, Marine Management filed for
bankruptcy protection in the United States Bankruptcy Court for
the Western District of Louisiana,[12] and, on Bollinger's motion,[13]
the *in rem* action was transferred to the bankruptcy court.[14]
Marine Management then filed a motion to release the M/V SAND
QUEEN in the bankruptcy court, stipulating that the release be
"without prejudice to any lien, claim or privilege claimed by
Bollinger Shipyard in and to the M/V Sand Queen."[15]  The
bankruptcy court granted that motion on April 12, 2006,[16] and the
vessel was released.

    The bankruptcy court approved of Marine Management's Fourth
Amended Plan of Reorganization on August 15, 2007.[17]  In that
plan, Marine Management stipulated to both Bollinger's secured

---

[10]    (Civ. A. No. 06-0499, R. Doc. 1.)

[11]    (Civ. A. No. 06-0499, R. Doc. 12.)

[12]    (Bankr. Case No. 06-50194, R. Doc. 1.)

[13]    (Civ. A. No. 06-0499, R. Doc. 22.)

[14]    (Civ. A. No. 06-0499, R. Doc. 23.)

[15]    (Bankr. Case No. 06-50194, R. Doc. 16.)

[16]    (Bankr. Case No. 06-50194, R. Doc. 17.)

[17]    (Bankr. Case No. 06-50194, R. Doc. 171.)

claim in the amount of $217,263.31, which was to be paid in 60 monthly installments at an interest rate of 8 percent per annum,[18] and Caterpillar's secured claim in the amount of $900,816.33, which was to be paid in monthly installments of $12,987.09 until paid in full.[19]  Marine Management stopped making the scheduled payments to both Bollinger and Caterpillar sometime before March 22, 2010, at which point the bankruptcy court lifted the automatic stay imposed by 11 U.S.C. § 362, and the M/V SAND QUEEN was abandoned as property of the bankruptcy estate.[20]  According to the affidavit of Benjamin Bordelon, Bollinger's Executive Vice President for Repair, Bollinger has received partial payments on its claim, and the total current indebtedness is $160,912.98.[21]  Christopher Oberholtzer, Caterpillar's Special Accounts Representative, also submits an affidavit, which states that the outstanding balance on the promissory note and loan agreement was $615,928.99 as of January 28, 2011, plus interest of $103.42 per diem thereafter.[22]

---

[18]   (Bankr. Case No. 06-50194, R. Doc. 150 at 9-10.)

[19]   (*Id.* at 12.)

[20]   (Bankr. Case No. 06-50194, R. Doc. 244.)

[21]   (R. Doc. 58-3 at 2.)

[22]   (R. Doc. 63-5 at 14.)

At some point, the vessel was moved within the Eastern
District of Louisiana.  On September 3, 2010, Bollinger's *in rem*
action was transferred to this Court.[23]  Bollinger filed an
amended verified complaint on October 4, 2010 requesting a
warrant of arrest for the M/V SAND QUEEN and requesting that the
vessel be sold to satisfy Bollinger's claim.[24]  The Court issued
a warrant, and the vessel was arrested on October 21, 2010.[25]
Caterpillar was granted leave to intervene on October 28, 2010.[26]
The Court then granted Bollinger's motion[27] for interlocutory
sale of the vessel on December 7, 2010,[28] and the vessel was sold
at public auction on December 30, 2010 for $340,000.00.[29]  The
proceeds were deposited in the registry of the Court.  The sale
was confirmed on January 21, 2011.[30]

Bollinger and Caterpillar now move for summary judgment to
recognize and enforce their respective liens against the M/V SAND

---

[23]  (R. Doc. 24.)

[24]  (R. Doc. 37.)

[25]  (R. Doc. 45.)

[26]  (R. Doc. 46; R. Doc. 47.)

[27]  (R. Doc. 49.)

[28]  (R. Doc. 52.)

[29]  (R. Doc. 54.)

[30]  (R. Doc. 62.)

QUEEN.  No other parties have come forth with competing claims.

## II.  STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).  When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008).  All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (quoting C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure: Civil* 2d § 2738 (1983)).

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must

come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'"  *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263-64 (5th Cir. 1991).  The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party."  *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim.  *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists.  *See id.* at 324.  The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial.  *Id.* at 325; *see also Little*, 37 F.3d at 1075 ("Rule 56 '*mandates* the entry of summary judgment, after adequate time for discover and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden

7

of proof at trial.'") (citing *Celotex*, 477 U.S. at 332).

## III. DISCUSSION

The Ship Mortgage Act, 46 U.S.C. § 31301, *et seq.*, governs the priority of the claims asserted here.  Specifically, under 46 U.S.C. § 31326, when a vessel is sold at a judicial sale, all claims against the vessel are terminated and subsequently attach to the proceeds of the sale.  When, as in this case, a "preferred ship mortgage" is asserted, the following order of priorities is applicable: (1) expenses of justice, (2) preferred maritime liens, (3) the preferred mortgage, and (4) other maritime liens. *See* Thomas J. Schoenbaum, *Admiralty and Maritime Law* § 9-6 (4th ed. 2003 & Supp. 2010); *see also Governor and Co. of Bank of Scotland v. Sabay*, 211 F.3d 261, 270 (5th Cir. 2000) ("A preferred ship mortgage 'has priority over all claims against the vessel (*except for* expenses and fees allowed by the court, costs imposed by the court, and *preferred maritime liens*).'") (quoting 46 U.S.C. § 31326(b)(1)).  Under the statute, a "preferred maritime lien" is defined as a "maritime lien on a vessel "(A) arising before a preferred mortgage was filed under section 31322 of this title; (B) for damage arising out of a maritime tort; (C) for wages of a stevedore . . . ; (D) for wages of the crew of the vessel; (E) for general average; (E) or (F) for salvage,

8

including contract salvage . . . ."  46 U.S.C. § 31301(5).

The facts in this case are undisputed.  Bollinger seeks recognition and enforcement of its lien against the M/V SAND QUEEN for "necessaries" as defined in 46 U.S.C. § 31301. "'Necessaries' include repairs, supplies, towage, and the use of a dry dock or marine railway . . . ."  It appears from the invoice submitted to Ocean Runner that Bollinger provided dry docking services in connection with a U.S. Coast Guard inspection.  These services clearly fall within the definition of "necessaries."  Accordingly, the Court finds that Bollinger has a valid maritime lien against the M/V SAND QUEEN.  *See* 46 U.S.C. § 31342 ("[A] person providing necessaries to a vessel on the order of the owner . . . has a maritime lien on the vessel").

For its part, Caterpillar asserts a "preferred mortgage" against the M/V SAND QUEEN.  A preferred mortgage is one that includes the whole of the vessel, is filed in substantial compliance with 46 U.S.C. § 31321, and covers a documented vessel.  *See* 46 U.S.C. § 31322(a).  Under section 31321, a ship mortgage must (1) identify the vessel; (2) state the name and address of each party to the instrument; (3) state, if a mortgage, the amount of the direct or contingent obligations that is or may become secured by the mortgage, excluding interest, expenses and fees; (4) state the interest of the guarantor,

mortgagor, or assignor in the vessel; (5) state the interest sold, conveyed, mortgaged or assigned; and (6) be signed and acknowledged.  46 U.S.C. § 31321(b).  Having reviewed the mortgage document, the Court finds Caterpillar's mortgage satisfies all of the requirements of section 31322 as set forth above.  Moreover, Caterpillar recorded its preferred mortgage with the U.S. Coast Guard at the National Documentation Center, which "gives rise to a presumption of regularity which in absence of other evidence is sufficient to establish the mortgage's validity."  *Westinghouse Credit Corp. v. O/S DOROTHY CLAIRE*, 732 F. Supp. 59, 61 (E.D. Tex. 1989) (citing *State Street Bank & Trust Co. v. SEA FREEZE*, 1981 A.M.C. 2001, 2003-04 (E.D. Va. 1979)).  The Court therefore finds that Caterpillar also has a valid lien against the vessel.

    With regard to priority between the two claims, Bollinger's lien for necessaries is a "preferred" maritime lien, as it is a maritime lien that arose before Caterpillar's preferred mortgage was filed under section 31321.  *See* 46 U.S.C. § 31301(5)(A); *see also Gulf Trading & Transportation Co. v. The Vessel Hoegh Shield*, 658 F.2d 363, 367 (5th Cir. 1981), *cert. denied*, 457 U.S. 1119 (1982) (stating that maritime liens arise at the moment "when the goods or services are supplied or performed").  As discussed above, preferred maritime liens take priority of

preferred mortgages.  Thus, Bollinger's lien takes priority over Caterpillar's and must be satisfied in full before Caterpillar can receive any proceeds from the sale of the M/V SAND QUEEN. Bollinger is thus entitled to $160,912,98 – the unpaid balance remaining on the services provided to the vessel – from the $340,000.00 in the registry of the Court.  As the value of Caterpillar's preferred mortgage lien exceeds the remaining proceeds sale of the vessel, Caterpillar is entitled to the entirety of the balance in the registry after satisfaction of Bollinger's claim.

## IV.  CONCLUSION

For the foregoing reasons, Bollinger's and Caterpillar's motions for summary judgment are GRANTED.  The Clerk of Court is hereby directed to distribute $160,912.98 from the funds in the Registry of the Court to Bollinger and to distribute the remaining balance of $179,087.02 to Caterpillar.

New Orleans, Louisiana, this 21st day of April, 2011.

_____

SARAH S. VANCE

UNITED STATES DISTRICT JUDGE

11